**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**NELSON DESIGN GROUP, LLC**                                                              **PLAINTIFF**

v.                                    **CASE NO.  3:07CV00177 BSM**

**RICHARD PUCKETT et al.**                                                               **DEFENDANTS**

### ORDER

Plaintiff Nelson Design Group, LLC, designs architectural floor plans for single family homes.  Mike Nelson is the principal owner of Nelson Design.  Defendant Richard Puckett is the former supervisor of computer aided drafting for Nelson Design.  Defendant State Development, LLC, is a construction management company that builds homes.  Central States Development Company, Inc., owns and markets houses.  Defendant Barry Phillips is the father of defendant Brent Phillips.  Barry Phillips is the managing partner of State Development and the president of Central States.  Brent Phillips is the secretary of Central States and a member of State Development.  Barry Phillips, Brent Phillips, State Development, and Central States are referred to collectively herein as the "Phillips Defendants."

Nelson Design filed this case on November 21, 2007, against the Phillips Defendants for infringing eight copyrights.  Nelson Design also sued Puckett for breach of confidentiality agreement.  The case was reassigned to this court on April 22, 2008, and the case was tried to the court on June 29 through July 1, 2009.

I. CONCLUSIONS OF LAW

A.     Copyright Infringement

Copyright protection attaches at the time an author creates an original work susceptible to copyright under 17 U.S.C. § 102(a); however, the copyright becomes enforceable only when the author complies with the formalities of registration, including payment of fees and deposit of copies of the work, is shown. *Lifetime Homes, Inc., v. Residential Dev. Corp.*, 510 F. Supp.2d 794 *800 (M.D. Fla. 2007). Original architectural works are normally subject to copyright protection, and may therefore, form the basis for a copyright infringement suit. *Johnson v. Jones*, 49 F.3d 494, *499-500 (6th Cir. 1998). Architectural works have been defined as "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101. While all house plans obviously share common features, some designs give particular homes a certain look and feel. *Cornerstone Home Builders, Inc. v. McAllister*, 303 F. Supp. 2d 1317, *1320 (M.D. Fla. 2004). It is this distinguishing look and feel that is subject to copyright protection. *Id*.

To establish a claim of copyright infringement, Nelson Design must prove that it owned a valid copyright and that the original elements of the copyrighted material were copied. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, *731 (8th Cir. 2006). A certificate

of copyright registration issued by the copyright office constitutes prima facie evidence of the validity and ownership of the copyright.  *See United Tel. Co. of Missouri v. Johnson Publ'g Co., Inc.*, 855 F.2d 604, *607 (8th Cir. 1988); *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, *290-91 (3d Cir. 1991). Copying may be established (1) by direct evidence or (2) by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing material and the copyrighted work. *Rottlund*, 452 F.3d at *731.  Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiff and the defendants.  *Id*. at *732.

In proving a substantial similarity between the copyrighted material and the material that is the subject of the infringement allegations, the plaintiff must show that there is a substantial similarity of both ideas and expression. *Id*. at *731; *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, *120 (8th Cir. 1987).  Further, similarity of ideas is analyzed extrinsically, with the focus being on the objective similarities in the details. *Hartman*, 833 F.2d at *120. Expert opinion and analytical dissection are admissible to prove similarity of ideas.  *See Rottlund*, 452 F.3d at *731; *Hartman*, 833 F.2d at *120.  If there is similarity in ideas, then similarity of expression is evaluated using an intrinsic test to determine if the two works are so dissimilar that ordinary reasonable minds cannot differ as to the absence of substantial similarity of expression.  *See Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d

3

939, *946 (8th Cir. 1992); *Hartman*, 833 F.2d at *120.

Independent creation is an affirmative defense, evidence of which may be introduced to rebut a prima facie case of infringement. *Repp & K & R Music, Inc., v. Webber*, 132 F.3d 882, *889 (2d Cir. 1997). Independent creation exists when a defendant created its own work without copying anything or if it copied something other than plaintiff's material. *Rottlund*, 452 F.3d at *732. To prove direct copying, however, is to disprove independent creation. *Rottlund*, 452 F.3d at *732. The fact that infringement is subconscious or innocent does not affect liability, although it may have some bearing on remedies. *Repp*, 132 F.3d at *889.

To meet its burden of persuasion, Nelson Design does not have to prove that the Phillips Defendants' designs are exact reproductions of its copyrighted works. *See T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, *112 (1st Cir. 2006); *Cornerstone*, 303 F.Supp. 2d at *1321. Differences between the works have some effect on the inquiry, but the mere existence of differences is insufficient to end the matter in the defendants' favor. *T-Peg*, 459 F.3d at *112.

*1. Remedies*

A party that infringes a copyright can be held liable for (1) the copyright owner's actual damages, plus the profits made by the infringer in using the copyrighted work; or (2) statutory damages. 17 U.S.C. § 504(a); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, *1101 (N.D. Cal. 2003). The copyright owner elects whether to seek actual damages or statutory

damages. 17 U.S.C. § 504(c); *Jackson*, 255 F. Supp. 2d at *1101.

Nelson Design alleges eight separate copyright infringements. For infringement numbers 6, 7, and 8, Nelson Design seeks actual damages, including the Phillips Defendants' profits in selling the homes. Nelson Design seeks statutory damages for infringement numbers 1, 2, 3, 4, and 5.

a. *Actual Damages*

Section 504(b) of the Copyright Act provides that a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." *Pfanenstiel Architects, Inc., v. Chouteau Petroleum Co.*, 978 F.2d 430, *432 (8th Cir. 1992). Actual damages are typically determined by considering the net profits the plaintiff would have earned but for the defendants infringement. *Regents of the Univ. of Minn. v. Applied Innovations, Inc.*, 685 F. Supp. 698, *711 (D. Minn. 1987).

b. *Statutory Damages*

The owner of a copyright may elect statutory damages for copyright infringement regardless of his actual damages and the amount of defendant's profits. *Jackson*, 255 F. Supp. 2d at *1101. Statutory damages are not available, however, if the infringement in an unpublished work commenced before the work is registered. *Johnson*, 149 F.3d at *504-05. Statutory damages are designed to compensate the copyright owner for losses incurred, and to deter future infringement. *See Johnson v. Jones*, 149 F.3d 494, *504 (6th Cir. 1998).

Hence, a plaintiff may recover statutory damages regardless of the adequacy of the proof regarding plaintiff's actual damages or the profits reaped by defendant. *Jackson*, 255 F. Supp. 2d at *1101. The availability of statutory damages ensures there will always be an avenue open to sanction an infringer and vindicate the statutory policy of discouraging infringement. *Id*.

Among the factors to consider in determining the amount of statutory damages are: (1) the revenues that the plaintiff lost as a result of the defendant's infringement; (2) the licensing expenses the defendants saved by infringing; (3) the profits the defendants gained by infringing; and (4) the infringer's state of mind. *Tempo Music, Inc. v. Christensen Food & Mercantile Co.*, 806 F. Supp. 816, *820 (D. Minn. 1992); *Halnat v. L.A.P.A., Inc.*, 669 F. Supp. 933, *937 (D. Minn. 1987). The statutory minimum award is $750 and the statutory maximum is $30,000. Statutory damages of not more than $150,000 may be awarded if the infringement was willfully committed. 17 U.S.C. § 504(c)(2). On the other hand, the award may be reduced to not less than $200 if the court finds that the infringer was not aware and had no reason to believe that his or her acts constituted an infringement. 17 U.S.C. § 504(c)(2).

  c. *Attorney's fees*

Section 505 of the Copyright Act permits an award of reasonable attorney's fees to the prevailing party. 17 U.S.C. § 505; *Hartman*, 833 F.2d at *122.

d. *Injunctive Relief*

Injunctive relief is permitted by Section 502 of the Copyright Act to prevent infringement of a copyright. 17 U.S.C. § 502; *Tempo Music, Inc.*, 806 F. Supp. at *820. In copyright actions, plaintiffs generally obtain permanent injunctions when liability has been established and there is a threat of continuing violations. *Id*.

B.    Breach of Confidentiality Agreement

To prove breach of the confidentiality agreement, Nelson Design must demonstrate that Puckett either used or divulged confidential information and that it was the type of information covered by the confidentiality agreement. *Vision-Ease Lens, Inc. v. Essilor Intern. SA*, 322 F. Supp. 2d 991, *994 (D. Minn. 2004).

## II.  FINDINGS OF FACT

A.    General Background

Having listened to the trial testimony, observed the demeanor of the witnesses, reviewed the trial transcript and exhibits, the court finds as follows:

1.    Nelson Design was founded in 1985 to provide house plans for developers and has grown into a company that provides national stock house plans through a number of publications and web sites, with sixty percent of its customers being builders and developers nationwide.

2.    Nelson Design owns copyrights for its architectural designs and drawings, including the ones at issue in this case, which are single family home plans: #NDG220,

#NDG510, #NDG508, #NDG567, #NDG128R, #NDG156, and #NDG 905.

3. The average purchase price for a license to use a Nelson Design plan is presently $920 and the average price of a plan in the year 2000 was $850. When a developer or individual purchases a plan from Nelson Design, he is not purchasing the actual plan. He is purchasing a license to use the plan once. Developers, however, can pay a forty to fifty percent premium to purchase a reproducible set of plans, which permits the developer to reproduce the plan ten times.

4. Michael Nelson is Nelson Design's founder, owner and head designer.

5. The process by which Nelson Design's creates a home design is as follows. Michael Nelson obtains the project criteria and then sketches out the concept on a pad of paper. He then hands the drawing to a draftsman, who lays out the concept in a computer aided drafting program, which is commonly referred to in the drafting industry as a "CAD" program. Mike Nelson does the general concept and the draftsman fills in the blanks by inputting the information in the CAD program.

6. There are many different CAD software programs and, since 1990, Nelson Design has used a FastCAD program developed by Evolution Computing. Although FastCAD software is generic when it is purchased, Nelson Design worked for approximately seven years to develop a FastCAD system that is uniquely tailored for Nelson Design. For example, Nelson Design's FastCAD system is unique in the way it illustrates its plans' dimensions, text and wall fill.

7.	Richard Puckett was hired as an intern beginning draftsman by Nelson Design in 2001. On April 23, 2001, Puckett signed a confidentiality agreement in which, among other things, he agreed that, during the term of his employment and for a period of two years thereafter, he would not use, discuss, or disclose in any way Nelson Design's production methods or design techniques.

8.	Puckett worked for Nelson Design until April 2007, and Mike Nelson viewed him as a very good and trusted employee. Puckett was promoted to CAD designer and later to CAD supervisor. As CAD supervisor, Puckett supervised a crew of CAD designers and continued to perform many of the duties he had prior to his promotion.

9.	Nelson Design provided Puckett with a home computer so that Puckett could work from home when he needed to take time off to care for his sick child. Puckett's only home computer was the one provided by Nelson Design and that computer contained Nelson Design's unique FastCAD program.

10.	From April 2001 to April 2007, Puckett had access to Nelson Design's proprietary designs. He had a key to Nelson Design's office and would often work after hours and on weekends and therefore had unfettered and unsupervised access to the designs while at work. He was also permitted to download information from Nelson Design's computer servers onto a zip drive so that he could work from home.

11.	On one occasion, Mike Nelson permitted Puckett to design a house for Puckett's cousin. Mike Nelson did not require Puckett to pay for the plan and Puckett

designed the plan on his home computer but then printed the plan on the printer in his office at Nelson Design. Mike Nelson was aware of the design that Puckett made for his cousin and specifically authorized the design. Although Puckett testified at trial that he was allowed by Nelson Design to prepare designs for friends and family members in his off time, nothing in the trial testimony supports that contention.

12. When Puckett resigned from Nelson Design in April 2007, Nelson Design had Craig McCoy, its web site maintenance technician remove its FastCAD system and other files from the computer that it provided Puckett. Nelson Design allowed Puckett to keep the computer.

B.  Infringement Number Four: The Casey Brown House
    818 Rolling Forrest Drive

13. The fourth infringement alleged by Nelson Design, is set forth in paragraphs 25 and 26 of the complaint, and involve a home built by Mr. and Mrs. Casey Brown on 818 Rolling Forrest Drive in Jonesboro.

14. In 2005, Casey Brown approached Brent Phillips about the possibility of the Phillips Defendants building his and his wife's "dream home." Mr. Brown and Brent Phillips were lifelong friends and were high school friends with Puckett, as they all had attended Jonesboro High School together. After meeting with Brent, Mr. Brown then met with Puckett to discuss designing his and his wife's "dream home." Puckett was employed at Nelson Design at the time.

15. Before approaching Puckett, Mrs. Brown had cut out a number of magazine

and newspaper clippings and knew exactly what she wanted. The first meeting between the Browns and Puckett to discuss the plans occurred at Puckett's house. They told Puckett what they wanted and he sketched it out. The next week, Puckett went to the Browns' house and they followed up on the sketches that Puckett began drawing a week earlier. This process continued over a period of time until the final blue prints were produced.

16.   Ultimately, the Browns built the home on 818 Rolling Forrest Drive in Jonesboro, Arkansas based on the design provided by Puckett.

17.   The plans for the Browns' house located at 818 Rolling Forrest Drive, were not a copy of NDG567 and therefore Puckett did not infringe Nelson Design's copyrighted plan number NDG567. This is an extremely close call because it is quite clear that Puckett not only had access to NDG567, but that he probably used NDG567 as a template by which he developed the design for the Browns' home. This is evident because the electrical plans and the text on NDG567 are identical to that found on the Browns' plan. If Puckett actually used NDG567 as a template, he sufficiently altered the layout of the Browns' house from NDG567 so that the final product of the Browns' plan is too dissimilar to NDG567 to determine that the copyright has been infringed. For that reason, Nelson Design's claim against Puckett for infringing NDG567 is denied.

C.   Infringements Number One, Two, Three, Five & Eight
     810 Gloucester, 817 Gloucester, 916 Gloucester, 919 Gloucester
     and 801 Rolling Forrest Drive

18.   The first, second, third, fifth and eighth infringements alleged in paragraphs

19, 20, 21, 22, 23, 24, 27, 28, 33 and 24 of the complaint, involve designs that were prepared by Puckett for defendant State Development, at the request of Barry Phillips and Brent Phillips, while Puckett was still employed with Nelson Design. These counts allege that Puckett and the Phillips Defendants infringed Nelson Design's copyrights numbered NDG128R, NDG220, NDG508, NDG510 and NDG905.

19.     While Puckett was employed at Nelson Design, he had a chance encounter with Brent Phillips. During that encounter, Puckett told Brent that he was starting a family and that Nelson Design was not paying him the salary that he needed. Brent told Puckett that he and his father, Barry Phillips, needed some house plans. Puckett told Brent that he could draw house plans for him during his own time, in the evenings and on weekends.

20.     Brent Phillips and Barry Phillips later met formally with Puckett and showed Puckett a large brown book containing notes and sketches that they had maintained for years. Puckett ultimately produced five designs for Brent Phillips and Barry Phillips, which resulted in houses being built in Jonesboro, Arkansas at 810 Gloucester, 817 Gloucester, 916 Gloucester, 919 Gloucester, and 801 Rolling Forrest Drive.

21.     All of the designs prepared by Puckett for the Phillips Defendants were produced while Puckett was employed by Nelson Design. Further, they were produced on the work computer provided to Puckett by Nelson Design.

22.     Although Puckett testified that he did not use Nelson Design's unique FastCAD system to develop the designs that he sold to the Phillips Defendants, that

testimony was not credible and it is hereby specifically found that Puckett used Nelson Design's software to prepare the designs for the Phillips Defendants.

23.     The process by which Puckett produced the designs for the Phillips Defendants is similar to the process by which he produced the designs for the Browns. He met with Brent and Barry Phillips, who showed him rough drawings and diagrams of what they wanted. He then took their sketches and produced a final product. He met with Barry and Brent along the way and constantly revised the designs until a final design was produced. In each case, however, Puckett did what he was trained to do at Nelson Design, he filled in the blanks.

24.     All of the evidence indicates that Puckett copied Nelson Design's copyrighted plans. First, he had unfettered access to the plans. Second, it has already been found that he used Nelson Design's software to prepare the designs. Third, the designs that Puckett prepared for the Phillips Defendants are identical in many ways to Nelson Design's copyrighted designs.

25.     The plans for the house located at 810 Gloucester were copied by Puckett and are an infringement of Nelson Design's copyrighted plan number NDG510.

26.     The plans for the house located at 817 Gloucester were copied by Puckett and are an infringement of Nelson Design's copyrighted plan number NDG508.

27.     The plans for the house located at 916 Gloucester were copied by Puckett and are an infringement of Nelson Design's copyrighted plan number NDG905.

28.     The plans for the house located at 919 Gloucester were copied by Puckett and are an infringement of Nelson Design's copyrighted plan number NDG220.

29.     The plans for the house located at 801 Rolling Forrest Drive were copied by Puckett and are an infringement of Nelson Design's copyrighted plan number NDG128R.

30.     For all of these reasons, Puckett is statutorily liable to Nelson Design for infringing its copyrights.

31.     In that Barry Phillips, Brent Phillips, and State Development used the infringed designs that Puckett produced, they are also statutorily liable to Nelson Design. The issue, however, is to what extent Barry Phillips, Brent Phillips, and State Development are liable in statutory damages. This is key because, although they were aware that Puckett was employed by Nelson Design at the time that they purchased his services, there was little additional evidence showing that they sought Puckett's services because he was employed by Nelson Design. Indeed, there was also no evidence that they knew that Puckett was using Nelson Design's copyrighted designs. Although one can assume that Barry Phillips, Brent Phillips, and State Development had to believe that Puckett would draw upon the resources that Nelson Design made available to him, there is no evidence that either of them sought Nelson Design's copyrighted designs or that they believed that is what they were getting from Puckett. The evidence indicates that Barry Phillips, Brent Phillips, and State Development simply wanted inexpensive house designs and that they wanted to help Puckett, who was a longtime friend of Brent Phillips.

32.     Central States did not receive services from Puckett and therefore all claims against it should be dismissed.

33.     The evidence shows that Puckett needed extra money and that he used Nelson Design's copyrighted designs as templates that he revised to create the designs that he sold to Barry Phillips, Brent Phillips, and State Development. And, unlike the plans he produced for the Browns, he failed to sufficiently alter the designs he sold to Barry Phillips, Brent Phillips, and State Development, thus producing plans that were very similar to Nelson Design's copyrighted designs. For instance, the layouts, the electrical plans and the text of the designs that he produced for Barry Phillips, Brent Phillips, and State Development are almost identical to the layouts, electrical plans and text of Nelson Design's copyrighted designs. Indeed, the same typographical errors and models found in Nelson Design's copyrighted documents are found in the designs produced by Puckett for Barry Phillips, Brent Phillips, and State Development. In several instances, the plans are so similar that one cannot differentiate the plans when the Puckett plan is laid over its copyrighted original. Indeed, on at least two occasions, it is evident that Puckett merely erased items from Nelson Design's copyrighted designs in an attempt to meet the Phillips Defendants' design requests.

D.      Infringement Numbers Six and Seven:
        Brandywine Drive Homes

34.     The sixth and seventh infringements alleged in paragraphs 29 through 32 of the complaint, involve designs that were prepared by Barry Phillips and Dan Mattix for Barry Phillips and State Development. These designs were used to construct two homes on

Brandywine Drive in Jonesboro that and are alleged to be infringements of Nelson Design's copyrighted design number NDG156.

35. Over the course of years, Mattix has designed approximately twenty houses for Barry Phillips and Brent Phillips. When designing for the Phillips, normally either Barry or Brent would bring Mattix a floor plan that had been laid out on grid paper and drawn to scale with a pencil. Mattix would put it into his computer and redraw it for them so that he could provide the correct dimensions and elevations.

36. In 1999, Dan Mattix was approached by Barry Phillips to design a home that State Development would build on Brandywine Drive. As normal, Barry Phillips gave Mattix a floor plan on graph paper. It was clear from Mattix's trial testimony that, although he met with Barry Phillips on a number of occasions to revise the plans, he took his directions from Barry Phillips. Indeed, he testified that he used the draft provided by Barry Phillips and laid it out in the CAD system as close to Barry Phillips's draft as he could get.

37. Further, at trial, Mattix was shown plaintiffs exhibit 24, which is Nelson Design's copyrighted design number NDG156. He was also shown plaintiffs exhibit 25, which is the 1999 design that he prepared for Barry Phillips. When asked to compare the two designs and to determine whether he saw anything significant, he said "[i]t looked pretty close" and that "[i]t's just hard to get one so close without having a copy of somebody else's." He also testified that he found it peculiar just how similar his design was to Nelson Design's copyrighted drawing.

38.     The design produced by Barry Phillips and Mattix are substantially similar in idea and expression to NDG156, so as to lead a fact-finder to believe that NDG156 was probably copied.  The problem, however, is that there is insufficient proof that either of the Phillips Defendants had access to NDG156 in order to copy it.  For that reason, the court finds that NDG156 was not copied and rules for the Phillips Defendants on infringements six and seven.

### III.  REMEDIES

Puckett, Barry Phillips, Brent Phillips, and State Development infringed upon Nelson Design's copyrights numbered NDG128R, NDG220, NDG508, NDG510, and NDG905.  Nelson Design seeks statutory remedies for those infringements.  As set forth above, among the factors to consider in determining the amount of statutory damages are:  (1) the revenues that the plaintiff lost as a result of the defendant's infringement; (2) the licensing expenses the defendants saved by infringing; (3) the profits the defendants gained by infringing; and (4) the infringer's state of mind.  *Tempo Music, Inc.*, 806 F. Supp. at *820; *Halnat*, 669 F. Supp. at *937.  The statutory minimum award is $750 and the statutory maximum is $30,000.  Statutory damages of not more than $150,000 may be awarded if the infringement was willfully committed. 17 U.S.C. § 504(c)(2).  On the other hand, the award may be reduced to not less than $200 if the court finds that the infringer was not aware and had no reason to believe that his or her acts constituted an infringement.  17 U.S.C. § 504(c)(2).

At most, Nelson Design lost $850 for each of the five plans that Puckett prepared for

Barry Phillips, Brent Phillips, and State Development. This totals $4,250, which is equal to the amount of licensing expenses that Nelson Design would have received had it licensed the designs to the Phillips Defendants. There was insufficient evidence to determine what profits were gained by the defendants as a result of the infringement. Regarding Puckett's state of mind while infringing on Nelson Design's copyright, it is pretty clear that Puckett was a young man with a young family and he simply needed the money. There is no evidence that the Phillips Defendants were actually aware that Puckett was infringing on Nelson Design's copyright, so this factor does not apply to them.

A.   Damages against Puckett

Statutory damages may be awarded against Puckett in an amount not less than $750 and not more than $30,000. The record is clear that Puckett intentionally copied Nelson Design's copyrighted designs. It is also clear that Puckett did not infringe on Nelson Design's copyright out of malice or contempt for Nelson Design. He did it because he needed the money and was attempting, in his own way, to moonlight on the side. Further, it is clear that it would not take a large damages award to punish Puckett for his actions. For these reasons, Puckett is hereby ordered to pay damages to Nelson Design in the amount of $8,500, which is double the amount of licensing fees Nelson Design would have received had Puckett properly sold the licensing rights to the Phillips Defendants and then remitted the proceeds to Nelson Design.

B.     Damages against State Development

There is no proof that Barry Phillips or Brent Phillips knew that Puckett was selling designs that infringed upon Nelson Design's copyrighted designs. For that reason, State Development, upon whose behalf Barry Phillips and Brent Phillips purchased the designs, is ordered to pay damages to Nelson Design in the amount of $4,250, which is $850 per design. The court will not reduce the award below the statutory minimum of $750 per design, as permitted by 17 U.S.C. § 504(c)(2), because, although there is no evidence that the Phillips Defendants were aware that their acts constituted an infringement, the court does not find that they "had no reason to believe" that their acts constituted an infringement. Although this is a very fine distinction, the court finds that there was information available to the Phillips Defendants to alert them that their actions could be infringing Nelson Design's copyrights. They knew that Puckett was a full time employee of Nelson Design, and that he was preparing designs for them on the side. A reasonable and prudent person would have been alerted to the fact that Puckett was using infringing designs.

C.     Injunctive Relief

All defendants are hereby enjoined from ever using the designs at issue in this lawsuit and from engaging in any future activity that infringes, in any way, upon the copyrighted designs of Nelson Design.

D.     Attorney's Fees

Puckett and State Development are hereby ordered to pay the reasonable attorney's

fees incurred by Nelson Design in the enforcement of the five designs that Puckett and State Development infringed. Puckett and State Development are jointly and severally liable for said fees, which are to be determined by the court. Nelson Design is to prepare a verified fee petition and submit it within thirty days of this order.

Entered this 28th day of July, 2009.

*[signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE